we're ready to hear arguments United States versus Pedro go ahead mr. early sorry I was just anxious to get going I'm William early I'm the I'm an assistant federal public defender I represent Jason Scott Pedro and mr. Pedro has a couple of issues for the court the first being whether there was a procedural error or whether the sentence is procedural procedurally reasonable secondly is substantive reasonableness now with respect to the procedural reasonableness issue mr. Pedro submits there's been an error in the calculation of his sentencing guideline range the large capacity magazine enhancement was applied to increase his base offense level from what would have been 14 to 20 in this particular case I believe that this issue requires the court to examine the definition of a firearm under title 18 section 921 a3 and that particular statutory provision has four sub parts to it with respect to how a firearm is defined and it is our contention that this court should rule that the large capacity magazine enhancement applies only to a firearm as defined in 921 a3 subpart a the cases where the large capacity magazine enhancement has been applied and there have been a couple that have been put out in the briefs the Davis case and I think the Evans case those cases and others like it start with the proposition that you have a a firearm that is missing some parts so the object in those particular cases is a weapon that will or is designed to expel a projectile it's just incapable of fulfilling that function or that design function because there are certain parts that have been removed from but do we need to debate whether or didn't he in fact admit that it was a firearm and guilty to that charge yes he admitted he admitted to possessing the receiver and the receiver is one of the inclusions in the definition of firearm under 921 a3 it comes in subpart B but most of these cases in fact everyone that I've seen are all dealing with what we traditionally think a firearm is and how it's defined in subpart a you know we don't have the situation where we've had a whole firearm and then parts of it have been removed or it's been disabled somehow or it's broke what we have is just a single part that has yet to be made in to a firearm with the other parts and probably quite a bit of assembly time I don't understand that because you told Judge Briscoe that he admitted it was a firearm now you're saying well King's X it doesn't count no no no no no for purposes of the enhancement under the large capacity magazine enhancement it is our contention that it only makes sense if that enhancement applies to a firearm as defined under subpart a of 921 a3 all of the provisions wouldn't that approach somewhere be articulated in the guidelines well it is not and the guidelines refer only to 921 a3 the general definition it doesn't go any sense to read it any other way and I'll explain why first of all this particular piece of metal that was at issue here in and of itself is not designed to expel a projectile it only assists in the expulsion of a projectile if numerous parts are added to it and and many many numerous parts so the the part of the is designed to expel a projectile doesn't fit with just the plain receiver portion of 921 a3 be the second half of the definition in 921 a3 a is or may readily be converted to expel a projectile similarly it doesn't have any application here either readily generally means quickly or easily or effortlessly the facts of this case do not support a finding that this piece of metal could easily or effortlessly be converted to expel a projectile and it would take again probably a trained individual with a lot of time and a lot of parts on their hand to make this into something that could expel a projectile I think it becomes even more clear that this particular enhancement should be limited to a good definition of a firearm under subpart 921 3a only when you look at the other subparts of the statute we're dealing with subpart B which is what he was convicted of possessing the frame or receiver of but when you go on further down and look at the other definitions of a firearm under 921 a3 subpart C includes a firearm muffler or silencer now I don't think anyone if you were convicted of possessing a firearm as defined under 921 a3 C I don't think anyone could argue that if you had a large capacity magazine that somehow that thing could be attached to a silencer or a muffler to expel a projectile it absolutely makes no sense you go on further down and you look at the definition of firearm under 921 a3 D that gets you into destructive devices and the guidelines refer to destructive devices as under title 26 58 45 you look at those particular items that includes I grenades rockets missiles mines so the definition of a firearm under 921 a3 D nobody could argue that you could attach a large capacity magazine to a bomb or a grenade or a rocket it absolutely makes no sense so the only was this argued below did you argue that this receiver should not be treated as a enhancement absolutely yes the distinction between 921 a3 a and B was clearly made in the argument to the court so and you make that argument in the face of the fact that you conceded it was a firearm yes we never we can't I and B well a3 has the four subparts we clearly fall within subpart B we're not disputing that because it was the lower receiver and subpart B of the definition of a firearm clearly states that the frame or receiver is defined as a firearm if we were going to argue that we would have probably filed a motion to count as a crime we're not doing that here what we're arguing about is the enhancement of the advisory sentencing guidelines by use of this large capacity magazine enhancement and it just clearly doesn't fit factually or legally under section 921 a3 B so again what mr. Pedro is asking this court to do is look at these subsections look at the how they they cannot be applied logically if you're looking at subsection B C or D of 921 a3 and limit the ruling or limit the use of the large command capacity magazine enhancement to just those yes yes and and I don't I want to make this clear I'm not arguing because we conceded that and that's what he pled guilty to Roald simply was cited for the fact that there's even a district court who doesn't even think that this particular piece of metal the receiver even qualifies as a firearm so it's the issue there and the court was looking at a regulation and that wasn't raised in this case was it no the only reason I have cited that case is to just make the point that when you're trying to apply this firearm large capacity magazine enhancement here it makes no sense to apply it simply to the frame and now with respect to whether there was error we certainly brought up substantive reasonableness of the sentence but I don't even think you really get there in this case because I think that the procedural error requires reversal if the court procedurally aired by applying the large capacity magazine enhancement then it's going to be up to the government to convince the court that it's harmless by a preponderance of the evidence and I think if you look at this court's law with respect to whether or not an error is harmless it's very clear that the the Tenth Circuit believes that there are very few cases where a miscalculation of the sentencing guidelines is not error that requires reversal well guess one is obviously one so mr. Hurley tell us so tell us why we shouldn't consider that any error harmless under a guess why so judge Friant had relied on a guess wine on his his willingness to go to the statutory maximum maybe he would have even increased it if the statutory maximum had been higher judge Russell was pretty unequivocal saying that except for the guilty plea in his crediting the defendant for a reduction based on the guilty plea that he would have applied the statutory maximum and so we have from guess wine what judge Friant had explained it doesn't seem terrible he used more words than judge Russell but I'm not sure he gave any more substantive explanation than judge Russell did so why isn't guess wine indistinguishable for purposes of harmlessness well I think because if you look at that particular case the judge went into a lot of detail as to why he chose the sentence that he did and that he would have picked something even worse if he had the opportunity referred to the the sexual abuse of a child the abuse of the relative who had cancer all of these other things and and if you look at what page 31 of the record on appeal you see really maybe just a few sentences as to why sentences saying that there's no more incendiary combination than the combination that was present in this particular case well I don't think that it when you look at the degree of the variance or departure and it's not really clear I mean judge Russell said he was departing at sentencing but varying in the statement of reasons but regardless of what you want to call it I don't think it suffices to to meet the level required by this court and and also the Supreme Court this court in the Pena Hermosillo case quoting Gaul versus United States said that major departures should be supported by more justification than minor ones in this case there's no linkage between your what judge Russell refers to as your history includes drugs violence and guns to anything recent as argued to judge Russell the last violent type of offense mr. Pedro had was many many years ago and his most current crimes that he had been facing while facing this same federal charge were not crimes of violence they were just run-of-the-mill criminal activity that he's running amok imposing a risk to people on the streets perhaps property but not people so I think that here given the fact that we went from what I say is a 30 to 37 month correctly calculated range all the way to 87 months certainly is not justified by just the language that judge Russell used I'll reserve the rest of my time thank you may proceed your honor may please the court my name is Mary Walters and I represent the United States in this case there are two issues before the court today one was the district court corrected applying the sentencing guideline enhancement for the possession of a semi-automatic firearm capable of accepting a large magazine and two was mr. Pedro sentence of 84 months substantively reasonable I agree with counsel that the firearm as defined by Congress is found in title 18 of the United States Code 921 a 3 and that subsections a and b do apply in this case subsection a being any weapon which will or is designed to or may be readily converted to expel a projectile by action of an explosive or subsection be the frame or receiver of any such weapon any such weapon referring back to subsection a both apply in this case in that referring to subsection a the evidence presented at sentencing was that the receiver or the firearm in this case could be converted readily to expel a projectile with the proper parts and second in the subsection B that this item is a lower receiver of an AR style rifle and the fact that the sentencing guideline enhancement does apply to all of section 921 a 3 the fact that both subsections a and b apply in this case would lend it to be that the enhancement was properly applied in determining that it will receiver in this case the firearm is a semi-automatic firearm and the fact that it was capable of accepting a large capacity magazine is fact that under United States sentencing guideline 2k 2.1 a 4b comment note to specifically semi-automatic firearm that has the ability to fire many rounds without reloading because at the time of the offense the magazine or similar device could accept more than 15 rounds of ammunition was in close proximity mr. Pedro was found to be in possession of not one but five fully loaded 30 round high-capacity magazines that appear to be new along with his new looking firearm while this court has not specifically squarely address this issue the 11th Circuit and the 8th Circuit have the 11th Circuit in a 2020 case United States versus Evans specifically deciding that capable of accepting a large capacity magazine are quote words of possibility not actuality here in mr. Pedro's case it is possible for the firearm to be capable of fitness or quality necessary not attaching not holding accepting and the lower receiver also referred to as the firearm in this case did have that ability in that the receiver of the magazine for firearm is found on this on this part of the weapon therefore it can be received and not necessarily need to be held as there is nowhere in this definition that so if you had an upper receiver that was incapable of holding the magazine that's not a firearm your honor it could fall under a firearm under subsection a depending on the facts and circumstances surrounding that particular piece in that case I thought you were making a distinction or a point about being able to receive the magazine I was referring your honor to capable of accepting and the firearm in this case is clearly capable of accepting based on its design and the fact that it falls under the firearm as defined in 921 a3 could you move your hair away from the microphone because we're getting static thank you so much I'll put it I'll actually put it up your honor I became prepared it took me a while to figure out what was going on thank you thank you honor but I still understand if we were talking about only the upper portion rather than the lower portion it will not accept the magazine correct if it was the upper portion that is correct your honor however in this case and that we're at the second hurdle the first hurdle is deciding whether or not the firearm possessed by mr. Pedro is in fact a semi-automatic firearm and then moving to the second issue which is met in this case would be the lower receiver capable of accepting a large capacity magazine so I think in in the instance that that you're presenting your honor the upper receiver would meet that definition of firearm however may not necessarily be able to receive or capable of receiving a magazine in that condition however fixed to fire with the appropriate pieces as in the United Circuit 2012 ruling that fairly good condition be fixed to fire it may fall under being fixed to fire but we would need the specifics of the surrounding of the possession of an upper receiver in that case further under United States versus Davis application of two for a firearm to be capable of accepting a high-capacity magazine it must meet three criteria one the firearm must be capable or capable of being fixed to fire two at the time of the offense the magazine with the capacity of 15 or more rounds must either be attached to or in close proximity to the firearm as was in this case and three the firearm and that point is not really debated is it the close proximity no your honor that that was agreed upon I believe by both and that close proximity was not an issue correct your honor and the firearm is must be capable of accepting the high-capacity magazine the one referred to in close proximity all three are found in this case again as your honor pointed out there were magazines five in fact in close proximity the firearm as the testimony given at sentencing would be able to be fixed to fire with the proper parts and three the lower receiver could accept a magazine in this case in that Davis applies to all of title 18 United States code 921 a3 and not a specific subsection it is relevant to this case and supports the government's stance there's Walters these magazines had ammunition in them didn't they they did your honor all five were fully loaded 30 round magazines if we were considering only the ammunition versus the lower receiver would the result be different than what you're asking for in this case if we were considering only the ammunition your honor yes I don't believe so I'm not sure I understand your question but I don't believe so based on the question you're asking well you could you definitely support the possession possession of firearm or ammunition but would it be a semi-automatic enhancement if you just had the magazines no your honor because there would be no firearm in that case as defined by Congress that's the reason why you choose to talk about the receiver in this case well that's what he was he was charged with and pled guilty to your honor I mean that's why you accepted that plea that's why that's the plea you want well that's what he was charged me to the ammunition correct we did not charge with the ammunition we elected to plea excuse me elected to charge him with the firearm yes your honor further any error of the district court in applying this guideline enhancement would be harmless counsel for mr. Pedro as stated that the burden of proof is preponderance of the evidence and as in the geeshwine case 2018 case decided by the 10th Circuit said that there may be harmless error when there is a cogent explanation as to why the 3553 a factor it's analysis is in geeshwine the district court was very specific in stating that but for mr. Pedro's plea of guilty the maximum penalty of 120 months would have been applied in this case however he was given credit and as in geeshwine the court explicitly tied its sentence to the statutory maximum reducing the sentence because of the plea of guilty the court explained its reasons in this case in mr. Pedro's case for tying its sentencing decision an appraisal of his history 33 prior convictions 28 criminal history points for an individual that is 36 years of age felony and misdemeanor offenses including what the district court referred to as an insidiary combination of drugs violence guns now regarding the amount of variance as stated by counsel in the Kenya here most co case the 10th Circuit case decided in 2008 and that mr. Pena was sentenced to 120 months on a downward variance when the district court decided a ruled that the guideline range in that case was 188 months to 235 months this was a ruling on the guidelines that was below the 324 months to 405 months which would have given a disparity of a hundred and three months in that case in this case we have a calculated guideline range of 51 to 6 through 3 months the fact that mr. Pedro was sentenced to 84 months just a 21 month variance is not as a major departure or variance from the guidelines in fact it was not even be close to the 67 or 103 months in the Pena Hermos Hermosillo case the case court in that case said that while finding it uncontroversial that quote a major departure should be supported by a more significant justification than a minor one the fact that we have a minor departure here or variance from the guideline range as calculated by the district court correctly would lend itself to show that the explanation given by the district court in this case is not only sufficient but gets past any argument that Pena Hermosillo would apply to reverse this case the extent of the variance is something that needs to be considered was considered and is appropriate the fact that mr. Pedro was sentenced to a 84 month sentence is and for that issue to be reversed the defendant must show that the sentence was arbitrary capricious whimsical or manifestly unreasonable we just don't have that here in fact the court stated that mr. Pedro with having 28 criminal history points with level 6 of the criminal history category starting at 12 points was more than double in fact if there was a criminal history category of 12 mr. Pedro would likely fall within that range and again this is an individual who is not elderly he is 36 years old and the fact that he has this incendiary combination of violence drugs and guns at such a young age the need to protect the public was clear as well as the nature and history of excuse me the nature and characteristics of the offense and the history and characteristics of the defendants all of which are listed on the statement of reasons for the downward for the upward variance and we're clear from the record with that the court considered the sentencing guideline factors set forth in title 18 United States Code 3553 the court also explicitly stated that it considered the pre-sentence report mr. pager sentencing memorandum mr. pagers state statement to the court and mr. pagers counsel statement as well for the government the defendant in this case was very evasive with questions from the court and asking why he had the high-capacity magazines that were fully loaded that appeared to be new with a new lower receiver also known as a firearm and the district court and asking the question several times I was still not able to get a clear answer in fact the defendant said I took credit I was in the car I was driving I think that is important to point out in that even at the time of sentencing when the district court has the defendant before it and the defendant is at the mercy of the court at that point and imposing a sentence up to ten years of a person's life still would not give clear answers the district court was very clear in why it ruled the way it did it gave a cogent and reasonable explanation for its sentence and making the sentence more likely within the bounds of reasonable choice as in United States vs. Barnes in 2018 10th Circuit case in that reason again error would be harmless the court did not make conclusory statements that would impose the same sentence as it had sustained the objection it explained it would have imposed the maximum sentence but credit the defendant for a plea of guilty decision tied to the maximum excuse me the statutory maximum not the guidelines for those reasons the United States requests that the finding of the district court be affirmed specifically that the district court correctly applied the sentencing guideline enhancement for the possession of a semi-automatic firearm capable of accepting a large capacity magazine and that mr. Pedro sentence of 84 months was I don't have a whole lot of time but I want to make it perfectly clear mr. Pedro was convicted of possession of a firearm as defined under 921 a 3b the receiver portion of that definition and again I believe that this enhancement should be limited only to firearms as defined under subsection a lastly with respect to the miscalculation of the guidelines I would just refer the court to and it's in the brief there's a quote from United States versus Snowden which is a 10th Circuit case in 2015 it will be a rare case in which we can confidently state that a guideline calculation error did not affect the district court selection of the sentence imposed and so I think with the error here this court should reverse and vacate the sentence and require sentencing without reference to the enhancement thank you thank you counsel for your arguments we appreciate the cases submitted